This decision of the Supreme Court of New Mexico was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Supreme Court.

## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Filing Date:  January 16, 2020**

**NO. S-1-SC-37092**

**STATE OF NEW MEXICO,**

Plaintiff-Respondent,

v.

**JOHN ERIC OCHOA,**

Defendant-Petitioner.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Conrad F. Perea, District Judge**

Bennett J. Baur, Chief Public Defender
Nina Lalevic, Assistant Appellate Defender
Santa Fe, NM

for Petitioner

Hector H. Balderas, Attorney General
John Kloss, Assistant Attorney General

for Respondent

## DECISION

**BACON, Justice.**

**{1}**     Defendant John Eric Ochoa was convicted of two counts of criminal sexual contact of a minor (CSCM), contrary to NMSA 1978, Section 30-9-13 (2003), and one count of interference with communications, contrary to NMSA 1978, Section 30-12-1 (1979).  He previously appealed his convictions, and the Court of Appeals reversed on speedy trial grounds.  *State v. Ochoa*, 2014-NMCA-065, ¶ 1, 327 P.3d 1102.  This Court, however, reversed the Court of Appeals and reinstated Defendant's convictions. *State v. Ochoa*, 2017-NMSC-031, ¶ 67, 406 P.3d 505.  Defendant filed a motion to

recall mandate for the Court of Appeals to address the remaining issues in his appeal, which the Court of Appeals granted. *State v. Ochoa*, A-1-CA-31243, mem. op. ¶ 1 (May 9, 2018). The Court of Appeals affirmed Defendant's convictions in a memorandum opinion, *id.* ¶ 44, and this appeal followed.

**{2}** We granted certiorari to review one of several issues raised on appeal by Defendant.[1] The lone issue for our consideration pertains to the district court's admission and exclusion of expert testimony at Defendant's trial. This single issue can be broken down into the following three sub-issues:

a) whether the district court erred in excluding Defendant's proposed expert witness because he lacked the requisite training and experience to critique how the child victims were interviewed;

b) whether the district court erred in denying Defendant's request for a continuance to find a replacement expert witness after excluding Defendant's proposed expert; and

c) whether the district court erred in admitting the expert testimony proffered by the State on a similar topic as Defendant's excluded expert witness testimony.

**{3}** We affirm the district court's decisions (1) to exclude Defendant's proposed expert witness, (2) to deny Defendant's request for a continuance to find a replacement expert, and (3) to admit the State's expert witness. Although the Court of Appeals also affirmed the district court's rulings on these sub-issues, it erroneously considered the testimony of the State's expert to be lay witness testimony. *See Ochoa*, A-1-CA-31243, mem. op. ¶ 11. We conclude—and both parties in this appeal agree—that the State's expert offered expert testimony, as defined in Rule 11-702 NMRA.

## I.    RELEVANT BACKGROUND

**{4}** Because the factual allegations underlying Defendant's convictions are not material to the parties' arguments in this appeal, we will not discuss them at length here. For context, however, four of Defendant's children (J.D., I.O, K.O, and E.O.) testified at trial about various sexual contacts that Defendant had with each of them. Defendant was convicted of CSCM only for his contacts with his daughter, E.O., who did not live with him but would visit him on some weekends. E.O. testified about multiple instances in which Defendant hugged her and placed his hand inside her underwear, and one instance in which he kissed her and it was a "long kiss." Defendant testified in his own defense and denied that he "engage[d] in sexual activity with any of [his] children."

---

[1] Despite the clear limitations of the grant of certiorari, Defendant's brief in chief addresses all of the issues that he raised on appeal before the Court of Appeals, rather than the lone issue before us. We do not address the remaining issues discussed in the brief in chief.

**{5}**     Detective Irma Palos and Detective Kacee Thatcher of the Las Cruces Police Department conducted safehouse interviews of J.D., I.O, K.O., and E.O. regarding the allegations they made against Defendant.  The detectives conducted the safehouse interviews of the four children by utilizing the CornerHouse safehouse interview technique.  Palos, who was employed by the Las Cruces Police Department for eleven years and had served as a detective for four years, was the "case agent" in Defendant's case and testified at trial.

## II.     DISCUSSION

### A.     The District Court Did Not Abuse Its Discretion in Excluding Defendant's Proposed Expert Testimony

**{6}**     Defendant argues that the district court abused its discretion in excluding the testimony of his proposed expert witness, a forensic psychologist, who was prepared to critique the CornerHouse technique.  For the following reasons, we conclude that the district court's exclusion of Defendant's proposed expert was not an abuse of discretion.

**{7}**     Defendant intended to offer the expert testimony of Dr. Alexander Paret at trial to provide his opinion that the interviews of Defendant's children were improperly administered and, as a consequence, led to suggestible interviews.  In Defendant's motion to allow expert testimony, he stated that Dr. Paret would testify about "examples and errors committed in the original [safehouse] interviews" and "[c]orrect [safehouse] interview techniques."  The district court held a hearing on May 5, 2010—twelve days before trial—on the admissibility of Dr. Paret's expert testimony.  At the hearing, defense counsel argued that "improper safehouse interviewing" was "the origin of some of the children's testimony" against Defendant, and that at trial, Dr. Paret would opine "as to the proper way to do safehouse interviews and how these interviews were done incorrectly."

**{8}**     Dr. Paret testified about his background, education, and experience at the May 5, 2010 hearing.  Dr. Paret stated that he double-majored in biology and chemistry, received his master's degree in counseling psychology, and received his Ph.D. in clinical and forensic psychology.  He testified that his current employment involved evaluating criminal defendants' competency to stand trial, amenability to treatment, and dangerousness, and that he had been qualified as an expert witness in New Mexico courts to testify about these issues.  Dr. Paret previously worked for four years at a program designed to help children who had been sexually abused.  In those four years, which coincided with his schooling to obtain his master's degree, Dr. Paret received extensive training in the "cognitive interview technique" for interviews of children.  Using this technique, he conducted approximately 400 interviews of children who had alleged they were sexually abused.  Although Dr. Paret left this program in 2002—eight years before Defendant's trial—and no longer interviewed children who alleged they were abused, he testified that he retained his expertise by reading publications on the cognitive interview technique and keeping in contact with his former colleagues.

**{9}** Notably, however, the cognitive interview technique was not the technique used for the safehouse interviews of Defendant's children. Detective Palos and Detective Thatcher used a different interview technique, the CornerHouse technique, in their safehouse interviews. Dr. Paret acknowledged the differences between the two techniques at the May 5, 2010 hearing, and testified that he had never conducted an interview using the CornerHouse technique or offered testimony on the technique. Although neither party extensively explored the differences between the two techniques during the May 5, 2010 hearing, Dr. Paret testified that interviews using the CornerHouse technique have four or five additional "steps" that are not part of the cognitive interview technique. Dr. Paret had never been trained as a safehouse interviewer to use the CornerHouse technique, and he never conducted research or published a paper on the CornerHouse technique (or safehouse techniques more generally). In addition, his analysis of the interviews in this case was from the perspective of the cognitive interview technique, rather than the perspective of the CornerHouse technique actually used.

**{10}** The district court found that Dr. Paret was "not qualified as an expert in the field of [s]afehouse protocol and techniques" and excluded him from presenting expert testimony at trial. The district court stated that Dr. Paret was "highly qualified" to testify about the focus areas of his current employment, such as competency to stand trial and evaluations of dangerousness, but he was "not qualified to critique a safehouse interview technique with which he is unfamiliar and has never studied nor employed." The district court specifically noted that Dr. Paret had not conducted any type of safehouse interview with a child in eight years and concluded that the particular safehouse interviews conducted were "not a subject of his expertise for him to critique."

**{11}** We will not reverse absent a showing that the district court abused its discretion. *State v. Alberico*, 1993-NMSC-047, ¶ 58, 116 N.M. 156, 861 P.2d 192; *see also Loper v. JMAR*, 2013-NMCA-098, ¶ 18, 311 P.3d 1184 ("The admission of expert testimony lies in the discretion of the trial court."); *State v. Downey*, 2008-NMSC-061, ¶ 26, 145 N.M. 232, 195 P.3d 1244 (providing that the language of Rule 11-702 "underscores that broad discretion intentionally is given to the trial court to determine whether expert testimony will assist the trier of fact"); *Shamalon Bird Farm, Ltd. v. United States Fid. & Guar. Co.*, 1991-NMSC-039, ¶ 6, 111 N.M. 713, 809 P.2d 627 ("The trial court has wide discretion to determine whether a witness is qualified to give testimony as an expert."). "Broad discretion in the admission or exclusion of expert evidence will be sustained unless manifestly erroneous." *Alberico*, 1993-NMSC-047, ¶ 58 (internal quotation marks and citation omitted). "When there exist reasons both supporting and detracting from a trial court decision, there is no abuse of discretion." *State v. Moreland*, 2008-NMSC-031, ¶ 9, 144 N.M. 192, 185 P.3d 363 (quoting *State v. Flores*, 2005-NMCA-135, ¶ 35, 138 N.M. 636, 124 P.3d 1175).

**{12}** Under Rule 11-702, witnesses "qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." In *Alberico*, this Court set

out three basic requirements that must be satisfied for a witness to testify as an expert under Rule 11-702: (1) the "expert must be qualified," (2) the expert's testimony must assist the trier of fact, and (3) the expert's testimony must be about "scientific, technical, or other specialized knowledge with a reliable basis." 1993-NMSC-047, ¶¶ 43-45.

{13} A key inquiry in this case is not whether Dr. Paret was qualified to offer expert testimony *in general*, but whether he was qualified to offer expert testimony critiquing the interview technique used on Defendant's children. Both this Court and the Court of Appeals have emphasized that an expert's testimony must be limited to the field(s) in which that expert is qualified to render an expert opinion. *See, e.g.*, *State v. Torrez*, 2009-NMSC-029, ¶ 21, 146 N.M. 331, 210 P.3d 228 ("[T]he court must evaluate a non-scientific expert's personal knowledge and experience to determine whether the expert's conclusions on a given subject may be trusted."); *State v. Torres*, 1999-NMSC-010, ¶ 45, 127 N.M. 20, 976 P.2d 20 ("[A] witness must qualify as an expert in the field for which his or her testimony is offered before such testimony is admissible."); *Lopez v. Reddy*, 2005-NMCA-054, ¶¶ 19-22, 137 N.M. 554, 113 P.3d 377 (rejecting the argument that a proposed expert was qualified to testify about the standard of care for a surgery despite a lack of expertise in surgical techniques); *Mikeska v. Las Cruces Reg'l Med. Ctr., LLC*, 2016-NMCA-068, ¶ 12, 388 P.3d 266 ("An expert witness may give his opinion on matters pertaining to his field." (internal quotation marks and citation omitted)). The Court of Appeals' analysis in *Lopez* is instructive in this case, because the proposed expert witness in *Lopez* was generally qualified to offer expert testimony on areas that were somewhat related to the relevant issues in the case, but he was nevertheless precluded from testifying. 2005-NMCA-054, ¶ 22. The proposed expert in *Lopez* was a medical doctor with privileges in internal medicine, hematology, and oncology, and the plaintiff offered him as an expert to opine that a surgeon's failure to remove a mass from her breast, which was shown in a radiology report, fell below the standard of care. *Id.* ¶ 18. The proposed expert did not perform surgery, but he frequently reviewed the results of surgical procedures performed on his patients. *Id.* He performed biopsies as part of his residency, but more than thirty years had passed since that experience. *Id.* ¶ 23. The Court of Appeals held that, "[w]hile we agree that [the proposed expert's] qualifications would allow him to testify on a number of subjects, we find no abuse of discretion in determining that he lacked the qualifications to testify as to the standard of care applicable to [the defendant] in performing the breast biopsy in this case." *Id.* ¶ 22.

{14} Like the proposed expert in *Lopez*, Dr. Paret's background would qualify him as an expert in certain areas, but it does not qualify him to render expert opinions about the proper administration of safehouse interviews using the CornerHouse technique. Dr. Paret's current employment in evaluating criminal defendants' competency to stand trial or their dangerousness is unrelated to administering safehouse interviews. While his former employment involved interviewing children who made claims of sexual abuse, he never used or researched the interview technique involved in this case. Also, while not as significant as the thirty-year period in *Lopez*, an eight-year period existed between Dr. Paret's last interview of a child alleging sexual abuse and Defendant's trial. The district court exercised its broad discretion in determining that Dr. Paret was not

qualified to offer expert testimony on the CornerHouse interview technique. The district court's determination was not an abuse of discretion.

**{15}** Defendant argues that "[i]n excluding Dr. Paret's testimony concerning the safehouse interviews, including the leading questions used and the resulting suggestibility, evidence supporting the theory of the defense, the trial court abused its discretion and denied [Defendant] his fundamental right to due process and a fair trial."[2] Defendant contends that Dr. Paret's testimony "would have clearly assisted the trier of fact" because he had "four years of experience interviewing children," he "knew the basic techniques that were central to any interview technique," and he had a Ph.D. and a master's degree in counseling psychology. According to Defendant, the district court's concerns with Dr. Paret's qualifications—including the passage of time since his last interview of a child and his lack of familiarity with the type of interview conducted on the victims in this case—"went to the weight, not the admissibility of Dr. Paret's testimony." To advance his argument, Defendant relies on *State v. McDonald* in which this Court stated that "any perceived deficiency in . . . education and training is relevant to the weight accorded by the jury to [the] testimony and not to the testimony's admissibility." 1998-NMSC-034, ¶ 21, 126 N.M. 44, 966 P.2d 752 (internal quotation marks and citation omitted).

**{16}** In *McDonald*, expert testimony from a DNA analyst working for the New Mexico Department of Public Safety was challenged on the grounds that the analyst only had a Bachelor of Science degree and had only taken one specialized course in molecular biology and one course in DNA analysis. *Id.* ¶¶ 10, 18. This Court concluded that it was not an abuse of discretion to permit the analyst to offer expert testimony, because he had received specialized training in molecular biology and DNA analysis. *Id.* ¶ 20. We stated that the defendant in *McDonald* was free to cross-examine the analyst on the extent of his education and training, but that the perceived deficiencies in these areas were questions of weight and not admissibility. *Id.* ¶ 21.

**{17}** Defendant's reliance on *McDonald* is unavailing. While certain deficiencies in an expert's qualifications are left to the jury, the district court retains its role to determine whether a witness is qualified to testify under Rule 11-702. *See Torrez*, 2009-NMSC-029, ¶ 21 ("[I]t is the duty of our courts . . . to determine initially whether expert testimony is competent under Rule 702.") (quoting *Alberico*, 1993-NMSC-047, ¶ 35). Here, the district court acted within its role when it determined that Dr. Paret was not qualified to testify as an expert in this case. To the extent Defendant's argument suggests that the district court lacks authority to exclude unqualified expert testimony because the jury can weigh any deficiencies, such a suggestion is at odds with applicable precedent.

---

2Defendant's contention that the district court's rulings violated his "fundamental right[s]" does not affect our analysis via the standard of review or otherwise. *See State v. Rosales*, 2004-NMSC-022, ¶ 7, 136 N.M. 25, 94 P.3d 768 (providing that the application of state rules of evidence does not "abridge an accused's right to present a defense so long as [the rules] are not arbitrary or disproportionate to the purposes they are designed to serve." (internal quotation marks and citation omitted)).

**B. The District Court Did Not Abuse Its Discretion in Denying Defendant's Request for a Continuance**

**{18}** Upon the district court's exclusion of Dr. Paret's testimony—which occurred twelve days before trial—Defendant sought a continuance in order to secure a replacement expert witness. Defendant made an oral motion at the May 5, 2010 hearing to request this continuance "to find an expert that would satisfy the court's qualifications." The district court immediately denied Defendant's request. As the basis for its denial, the district court stated the following:

> I'm going to deny [the request for additional time]. [Defendant has] filed four motions to dismiss for speedy trial violations. I am not in a position to continue this trial again . . . and I don't know whether you can shop around to find an expert tailored to do what you want to do or not. But I do know that this case needs to go to trial. Mr. Ochoa has been in jail a long time. . . . This case has got to be tried, counsel.

**{19}** The Court of Appeals affirmed the district court's denial of Defendant's motion for a continuance after analyzing the motion under the factors adopted by this Court in *Torres*, 1999-NMSC-010, ¶ 10. For the reasons set forth below, we affirm the denial of Defendant's motion for a continuance.

**{20}** "The grant or denial of a continuance is within the sound discretion of the trial court, and the burden of establishing abuse of discretion rests with the defendant." *State v. Salazar*, 2007-NMSC-004, ¶ 10, 141 N.M. 148, 152 P.3d 135. "Defendant must establish not only an abuse of discretion, but also that the abuse was 'to the injury of the defendant.'" *Id.* (quoting *State v. Nieto*, 1967-NMSC-142, ¶ 5, 78 N.M. 155, 429 P.2d 353). Further, under the abuse of discretion standard, where legal principles are correctly applied and their application can yield multiple outcomes, we give deference to the district court's ruling. *State v. Ferry*, 2018-NMSC-004, ¶ 2, 409 P.3d 918.

**{21}** In *Torres*, this Court set out a non-exhaustive list of seven factors for district courts to consider when evaluating a request for a continuance. 1999-NMSC-010, ¶ 10. These factors include:

> the length of the requested delay, the likelihood that a delay would accomplish the movant's objectives, the existence of previous continuances in the same matter, the degree of inconvenience to the parties and the court, the legitimacy of the motives in requesting the delay, the fault of the movant in causing the need for a delay, and the prejudice to the movant in denying the motion.

*Id.*

**{22}** In *Salazar*, 2007-NMSC-004, ¶ 27, this Court held that "our case law requires the trial court to consider the *Torres* factors initially in evaluating a motion for a continuance.

If those factors applied logically and in a balanced way support the motion, the motion should be granted." Here, the district court did not walk through each factor one-by-one before denying the continuance, nor did it make any written findings with respect to the continuance. The district court did, however, acknowledge previous continuances that had been granted in the case, along with the facts that Defendant was in jail awaiting trial and that Defendant may not have been able to find a suitable replacement expert even with additional time. These considerations are relevant to the *Torres* analysis and demonstrate that the district court adhered to *Salazar* by considering some of the *Torres* factors in its decision to deny the continuance.

**{23}** The Court of Appeals correctly concluded that it was not an abuse of discretion for the district court to deny Defendant's request for a continuance. *See Ochoa*, A-1-CA-31243, mem. op. ¶ 21. In doing so, the Court of Appeals expanded on the *Torres* analysis and properly examined which factors weighed in favor of a continuance and which factors weighed against it. *See id.* ¶¶ 15-21. We recognize the Court of Appeals' well-reasoned analysis and adopt that reasoning here. *See id.*

**C.    The District Court Did Not Abuse Its Discretion in Admitting the State's Expert Testimony**

**{24}** In the State's case in chief, it presented the testimony of Detective Palos, who conducted the interview of one of Defendant's children who alleged sexual abuse. Detective Palos testified that she "received training in Minnesota with CornerHouse as a forensic interviewer for children for sexual and physical abuse." Before Detective Palos offered any opinion testimony, counsel for the State and Defendant approached the bench and the State's counsel informed the court that she was going to ask Detective Palos whether it was unusual for children to disclose additional information about their sexual abuse as time goes on. The district court told the State's counsel that Detective Palos' response to the question would solely be "an opinion based on her training." After the bench conference, when the State asked Detective Palos this question, defense counsel objected on the grounds that no proper foundation had been laid under *Daubert*. The district court overruled this objection, and Detective Palos opined that "it is not unusual for a child not to disclose fully what happened or what they experienced." This was the extent of Detective Palos' opinion testimony.

**{25}** Defendant's argument regarding Detective Palos' testimony is twofold: First, Defendant contends that Detective Palos should not have been permitted to offer any testimony in the form of an expert opinion. Second, Defendant argues that once Detective Palos was qualified, "defense counsel should have been allowed to question her in her area of expertise." We review the admission of expert testimony for an abuse of discretion. *See Alberico*, 1993-NMSC-047, ¶ 58. Neither part of Defendant's twofold argument compels the conclusion that the district court abused its discretion.

**{26}** First, with regard to Defendant's contention that Detective Palos should not have been qualified as an expert, we conclude that the district court correctly decided that Detective Palos was qualified to offer non-scientific expert testimony based on her

training and experience. As we held in *Torrez*, a district court "must evaluate a non-scientific expert's personal knowledge and experience to determine whether the expert's conclusions on a given subject may be trusted." 2009-NMSC-029, ¶ 21. Before offering expert testimony, Detective Palos testified that she served as a police officer for eleven years and had been a detective for four years. She testified that she received specialized training "with CornerHouse as a forensic interviewer for children for sexual and physical abuse." She also affirmed that she had received training "regarding how children disclose that they have been sexually abused." While she did not specify the number of trainings that she had attended through CornerHouse on the topic of child abuse or sexual abuse, she stated that she had "attended many" such trainings. Importantly, Detective Palos' expert testimony was confined to an area in which she had received training: that it is "not unusual for a child not to disclose fully what happened or what they experienced" in interviews about their sexual abuse. Based on Detective Palos' testimony about (1) her experience as a police officer and detective, and (2) her specialized training in interviewing children using the CornerHouse technique when they have alleged sexual abuse, we conclude that the district court did not abuse its discretion in admitting her expert testimony. *See State v. Hernandez*, 1993-NMSC-007, ¶¶ 60-61, 115 N.M. 6, 846 P.2d 312 (emphasizing that Rule 11-702 allows experts to be qualified on the basis of knowledge, skill, experience, training, *or* education).

**{27}** Second, with regard to Defendant's contention that he should have been permitted to cross-examine Detective Palos on her area of expertise, this contention is based on the false premise that Defendant was not allowed to pursue this line of questioning at trial. Defendant claims that he "should have been allowed to explore whether leading questions could be used and explore why they might be suggestive." Defendant was, in fact, allowed to explore these topics, but defense counsel did not take the opportunity to do so. During defense counsel's cross-examination of Detective Palos, the district court initially stopped defense counsel from asking questions about the content of the interviews with Defendant's children and whether such interviews used leading questions. However, before the end of the cross-examination, the district court told defense counsel "I'll let you ask [Detective Palos] if she avoided using leading questions or suggesting the answers, but I'm not going to let you critique the form of the safehouse interview. Okay. You may ask those questions only if you would like to." After receiving this guidance from the district court, defense counsel did not ask Detective Palos about leading questions in the children's interviews and told the district court that he had nothing further for Detective Palos. Defense counsel chose not to ask such questions of Detective Palos at trial, so Defendant cannot validly argue on appeal that he was deprived of the opportunity to ask the questions. *See State v. Shafer*, 1985-NMCA-018, ¶ 25, 102 N.M. 629, 698 P.2d 902 (providing that error may not be predicated on a defendant's abandonment of a line of questioning in cross-examination).

**{28}** The Court of Appeals held that the district court did not err in admitting Detective Palos' testimony at trial, but analyzed this issue as if her testimony were lay testimony, rather than expert testimony. *See Ochoa*, A-1-CA-31243, mem. op., ¶ 11 ("We also conclude that the district court did not abuse its discretion in permitting Detective Palos

to render the lay opinion that based on her training and experience, it is not unusual for children to fail to make full disclosures.")  The State does not contest Defendant's assertion that the Court of Appeals incorrectly characterized Detective Palos' testimony as lay testimony.

**{29}**    The Court of Appeals arrived at the correct decision on this issue—that the district court did not abuse its discretion in admitting Detective Palos' testimony. However, the Court of Appeals was incorrect in treating Detective Palos' testimony as lay testimony.  Witness testimony analyzing the behavior of children alleging sexual abuse during safehouse interviews is specialized knowledge expert testimony under Rule 11-702. *See State v. Duran*, 2015-NMCA-015, ¶ 18, 343 P.3d 207. Therefore, we affirm the judgment of the Court of Appeals on this issue, though for different reasons. *See Morales Res., Inc. v Gilbreath*, 2003-NMSC-023, ¶ 1, 134 N.M. 308, 76 P.3d 626.

## III.    CONCLUSION

**{30}**    For the reasons stated herein, we affirm the district court's decisions to (1) exclude Defendant's proposed expert witness; (2) deny Defendant's request for a continuance; and (3) admit the opinion testimony of the State's expert witness.

**{31}    IT IS SO ORDERED.**

**C. SHANNON BACON, Justice**

**WE CONCUR:**

**JUDITH K. NAKAMURA, Chief Justice**

**BARBARA J. VIGIL, Justice**

**DAVID K. THOMSON, Justice**

**BRETT R. LOVELESS, Judge**
**Sitting by designation**