**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 18 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

HELEN INGRAM, Special
Administration of the Estate of
LaTasha Cherie Ingram, deceased,

      Plaintiff-Appellant,

v.

MUSKOGEE REGIONAL MEDICAL
CENTER,

      Defendant-Appellee,

    and

JAY A. GREGORY, M.D.;
RUSSELL T. SHEPHEARD, M.D.;
BERRY E. WINN, M.D., P.L.L.C.,

      Defendants.

No. 99-7126

---

### APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF OKLAHOMA
### (D.C. No. 99-CV-262-S)

---

Submitted on the briefs:

John F. McCormick, Jr., Harry A. Parrish, of Pray, Walker, Jackman, Williamson
& Marlar, Tulsa, Oklahoma, for Plaintiff-Appellant.

Terry Todd, Leslie C. Weeks, Elizabeth K. Hall, of Rodolf & Todd, Tulsa,
Oklahoma, for Defendant-Appellee.

Before **TACHA** , **EBEL** , and **BRISCOE** , Circuit Judges.

**EBEL** , Circuit Judge.

This suit arises from the death of LaTasha Ingram after she suffered a gunshot wound to the chest.  The following facts are not disputed.  Ms. Ingram was shot in the early hours of the morning and taken to the emergency room at Muskogee Regional Medical Center (MRMC) in Muskogee, Oklahoma.  The emergency room physician, Dr. Russell Shepheard, initiated treatment and called the on-call surgeon, Dr. Jay Gregory.  Dr. Gregory ordered Ms. Ingram transferred to the intensive care unit over the phone, and determined later at the hospital that she needed cardiovascular surgery.  Because MRMC lacked the necessary surgeons, Dr. Gregory arranged for Ms. Ingram to be transferred to St. Francis Hospital in Tulsa.  The risks were explained to plaintiff, Ms. Ingram's mother, who then requested the transfer in writing.  Ms. Ingram died shortly after she was transferred from MRMC.

Plaintiff sued MRMC and three physicians, asserting claims of wrongful death under theories of common law medical malpractice and violation of the Emergency Medical Treatment and Active Labor Act (EMTALA), 42 U.S.C. § 1395dd.  Plaintiff alleged that MRMC inappropriately transferred Ms. Ingram

under EMTALA because defendants failed to first stabilize her condition and minimize the risk of transfer by inserting chest tubes. The district court granted summary judgment to MRMC on plaintiff's EMTALA claim and dismissed the pendent medical malpractice claims for lack of jurisdiction. Plaintiff appeals from the grant of summary judgment to MRMC, but does not challenge the dismissal of her pendent claims against defendants. We have jurisdiction under 28 U.S.C. § 1291, and affirm. [1]

On appeal, plaintiff argues that the district court erred: (1) in granting summary judgment to MRMC when plaintiff presented evidence that Ms. Ingram's transfer was not appropriate under EMTALA; (2) in holding that a difference of opinion on appropriate treatment supported only a state medical malpractice issue; and (3) in requiring plaintiff to present proof of a violation of MRMC's procedures or requirements regarding Dr. Gregory's failure to insert chest tubes to support her claim that Ms. Ingram's transfer was not appropriate under EMTALA.

We review the grant of summary judgment de novo, using the same standard as the district court under Fed. R. Civ. P. 56(c). Ford v. West , 222 F.3d

---

[1]     After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

767, 774 (10th Cir. 2000). A summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c).

EMTALA was enacted to prevent hospitals from "dumping" patients that they could treat but who could not pay for services. See, e.g. , Bryan v. Rectors & Visitors of the Univ. of Va. , 95 F.3d 349, 351-52 (4th Cir. 1996); Summers v. Baptist Med. Ctr. Arkadelphia , 91 F.3d 1132, 1136-37 (8th Cir. 1996); Delaney v. Cade, 986 F.2d 387, 391 n.5 (10th Cir. 1993); Thornton v. S.W. Detroit Hosp. , 895 F.2d 1131, 1134 (6th Cir. 1990); see generally 131 Cong. Rec. 28568-28570. A hospital governed by EMTALA is faced with two basic requirements. First, "the hospital must provide for an appropriate medical screening . . . to determine whether or not an emergency medical condition . . . exists." 42 U.S.C. § 1395dd(a). Plaintiff did not allege that MRMC's initial medical screening was not appropriate.

Second, EMTALA also requires that "[i]f an individual at a hospital has an emergency medical condition which has not been stabilized . . ., the hospital may not transfer the individual unless" certain conditions are met. § 1395dd(c)(1). An initial condition is that the individual, or a responsible person acting on his or her behalf, after being informed of the hospital's EMTALA obligations, must

-4-

request a transfer in writing, § 1395dd(c)(1)(A)(i), or a physician must determine that the risks of transfer are outweighed by the medical benefits reasonably expected to be provided at another medical facility, and this determination must be documented in a signed certification, § 1395dd(c)(1)(A)(ii), (iii).

In addition, however, the transfer must be "appropriate," as defined by the statute. § 1395dd(c)(1)(B). "An appropriate transfer to a medical facility is a transfer--(A) in which the transferring hospital provides the medical treatment within its capacity which minimizes the risks to the individual's health." § 1395dd(c)(2).

The district court determined that there is a dispute of material fact as to whether Ms. Ingram's condition was stable when she was transferred. Because summary judgment was sought against plaintiff, the district court therefore appropriately completed its analysis under EMTALA assuming that Ms. Ingram's condition was not stable and that the limitations of § 1395dd(c) on transferring her to another hospital applied. The court correctly determined that defendants had satisfied the written request and signed certification conditions for transfer under § 1395dd(c)(1)(A). The parties dispute whether the transfer was "appropriate" within the meaning of § 1395dd(c)(2)(A).

There was no dispute that MRMC could have inserted chest tubes prior to transfer. However, there was a sharp dispute as to whether insertion of chest

tubes would have been helpful or harmful.  The court noted that plaintiff produced evidence that the insertion of chest tubes prior to Ms. Ingram's transfer would have reduced the risks of transfer, while MRMC presented evidence that insertion of chest tubes would have created the possibility that Ms. Ingram would bleed to death.  Thus, the question is whether plaintiff raised a factual dispute as to whether MRMC "provide[d] the medical treatment within its capacity [to] minimize[] the risks to [Ms. Ingram's] health."  § 1395dd(c)(2)(A).

We hold that plaintiff's evidence is insufficient to create a material dispute of fact within the meaning of the statute.  We have found no cases from any jurisdiction interpreting § 1395dd(c)(2)(A).  However, in     Repp v. Anadarko Municipal Hospital  , 43 F.3d 519, 522 (10th Cir. 1994), this court construed similar language in EMTALA's screening provision, § 1395dd(a).  Section 1395dd(a) states that "the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency department."  We stated that the phrase "appropriate medical screening" was ambiguous, and then concluded that each hospital determines its own capabilities by establishing a standard procedure, which is all the hospital needs to follow to avoid liability under EMTALA.  43 F.3d at 522.  This narrow interpretation ties the statute to its limited purpose, which was to eliminate patient-dumping and not

to federalize medical malpractice.     See, e.g. , Bryan, 95 F.3d at 351-52;    Summers ,
91 F.3d at 1136-37;    Thornton , 895 F.2d at 1134;    see generally   131 Cong. Rec.
28568-28570.

We conclude that sections (a) and (c)(2)(A) should be interpreted similarly,
considering the similarity of the language in those sections and the lack of any
meaningful distinction between the terms "capability" and "capacity."  Therefore,
in light of this court's prior decision in      Repp, MRMC's capacity to provide
medical treatment to minimize the risks of transfer should be measured by its
standard practices, and plaintiff was required to produce evidence that
Dr. Gregory violated an existing hospital procedure or requirement by failing to
insert chest tubes in order to show that the transfer was not appropriate under
§ 1395dd(c)(2)(A).  Because she did not, the grant of summary judgment to
MRMC was proper, and the district court judgment is affirmed.

AFFIRMED.